IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| CHARLES BROWN | § | |
| VS. | § | CIVIL ACTION NO. 9:09cv195 |
| DAVID SWEETIN, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Charles Brown, previously an inmate confined at the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on November 25, 2009. On May 13, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively testified under oath about prison policies and information contained in the Plaintiff's prison records.

The Plaintiff testified that he had a staph infection while confined at the Eastham Unit. By July 9, 2009, the infection resulted in a boil about the size of a golf ball on his right buttock. He was

examined by P. A. Hough. She gave him antibiotics and told him to return to the infirmary if the boil started leaking. The boil started leaking later that night. He tried to go to the infirmary, but the unit was locked down and there was insufficient staff to transport him to the infirmary. On July 13, 2009, he showed the infection to Sgt. Clark, who immediately escorted him to the infirmary.

Defendant Nurse Barley saw the Plaintiff. He called the Plaintiff names and refused to treat him. Sgt. Gunner reprimanded Nurse Barley, who still refused to treat the Plaintiff. Apparently Nurse Barley previously had a staph infection, and he did not want to touch it and possibly get a new staph infection himself. Nonetheless, he gave the Plaintiff medication to put on the infection, along with tape and gauze. He told the Plaintiff to have his cellmate help treat the area. His cellmate agreed to help him.

Later that night, on July 14, 2009, the Plaintiff was placed on a medical chain bus and transported to the Estelle Unit. He was transported there for a follow-up examination regarding a cataract. He showed his staph infection to medical personnel at the Estelle Unit and received treatment. Antibiotics were prescribed, which were provided to him upon his return to the Eastham Unit. The Plaintiff estimated that the amount of time that expired from when he saw Nurse Barley and when he received treatment at the Estelle Unit was twelve hours.

The Plaintiff testified that the staph infection spread to his groin area. He believes that the infection spread because he went several days without treatment. He also fears that the infection may reoccur and develop into MRSA. He also fears that antibiotics may not be effective in the future because he may have developed a resistance to their effectiveness as a result of using them so much to treat the infection.

The Plaintiff gave the Court permission to review his relevant prison records, including his medical records. The clinic notes recorded that Nurse Hough observed a 2 cm. boil-like lesion on July 10, 2009. Clindamycin HCL (an antibiotic), Sulfamethoxazole (an anti-infective) and Ibuprofen were prescribed. The nursing clinic notes do not include an entry by Nurse Barley on July 13, 2009. The next nursing clinic note confirms that a nurse at the Estelle Unit treated the Plaintiff on July 14, 2009. Nurse Kamt, at the Eastham Unit, changed his dressing on July 16, 2009. The area was cleaned with iodine and a new dressing applied. She indicated that there was no sign of drainage or foul odor. Nurse McGinnis noted that the rash had spread to the Plaintiff's groin area by August 13, 2009. P.A. Hough issued instructions for treating the condition on August 18, 2009. On September 16, 2009, P.A. Hough described the rash as jock itch, saying it was still present but healing. Hydrocortisone cream was ordered. The Plaintiff was seen again on October 14, 2009. Additional medication was prescribed on October 27 and November 9, 2009. On January 15, 2010, P.A. Hough examined him for an evaluation of the staph infection. She noted that he previously had multiple boils that had been treated with antibiotics. She did not observe any evidence of staph infection or boils at that time. Her assessment was "boils resolved."

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001).

In the present case, the Plaintiff's factual allegations reveal that medical personnel, in general, were attentive to his medical needs and were not deliberately indifferent. On the other hand, Nurse Barley's refusal to touch or personally treat the Plaintiff's boil is a source of some concern. Still, Nurse Barley provided the Plaintiff with medication, gauze and tape. He gave the Plaintiff instructions about treating the boil and suggested that he have his cellmate help him. The Plaintiff acknowledged that his cellmate did, in fact, help him. Even though the facts attributed to Nurse Barley is a source of some concern, the Court cannot say that his conduct rose to the level of deliberate indifference.

The Plaintiff also testified that he received treatment at the Estelle Unit twelve or so hours later. Consequently, to the extent that Nurse Barley's behavior can be described as deliberately indifferent, there is a question about whether he was harmed by the delay in receiving treatment by medical personnel. A "delay in medical care can only constitute an Eighth Amendment violation

4

if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The Plaintiff failed to show that he experienced substantial harm as a result of Nurse Barley's actions. The facts attributed to Nurse Barley fail to state a claim upon which relief may be granted and should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff sued David Sweetin because he was the warden of the Eastham Unit and ultimately responsible for events that transpired at the unit. He sued an unknown Medical Director of the University of Texas Medical Branch because that person was ultimately responsible for the medical care provided to inmates. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). The Plaintiff testified that neither individual was personally involved in this matter. They were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. The claims against Warden Sweetin and the unknown Medical Director fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **15** day of **June, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE